NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2437
_____

UNITED STATES OF AMERICA

v.

RAUL OSVALDO ROSALES,
a/k/a Saulo Solorazano,
a/k/a Saulo Solorzano

Raul Osvaldo Rosales,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-15-cr-00085-002
District Judge: The Honorable Jan E. DuBois

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 23, 2017

Before: SMITH, *Chief Judge*, JORDAN, and ROTH, *Circuit Judges*

(Filed: April 19, 2017)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Chief Judge.*

Raul Rosales appeals a District Court order denying a motion to suppress evidence.  For the following reasons, we will affirm.

I.

The following facts, taken from the District Court's memorandum opinion resolving the motion to suppress evidence, are not in dispute.  On February 3, 2015, pilot Warren Nichols departed Los Angeles, California, in a small airplane. The plane made a series of stops.  Raul Rosales accompanied Nichols as the sole passenger starting in at least Albuquerque, New Mexico.  The next morning at 2:00 a.m., the two men landed at Wings Air Field, a small, rural airport outside Philadelphia, Pennsylvania.

While in the air, the flight was monitored by the Air and Marine Operations Center (AMOC), a division of the Department of Homeland Security.[1]  AMOC began monitoring Nichols's plane because it was leaving Los Angeles, a common "source city" for drugs, and heading towards Philadelphia, a common "destination city" for drugs.  AMOC observed that the plane followed an unusual flight path,

---

[1] According to the DHS website, AMOC was established "to counter the airborne drug smuggling threat" and "investigates more than 25,000 domestic and foreign flights per month to separate legal air traffic from potential violators and terrorists."  *See Air and Marine Operations Center*, U.S. Customs & Border Protection, www.cbp.gov/border-security/air-sea/operations/locations/am-ops-center (last visited April. 18, 2017).

stopping multiple times to refuel and changing course headings and altitude frequently—actions that increased both the cost of the flight and the wear-and-tear on the plane. AMOC deemed the flight suspicious and alerted the Homeland Security Investigations Unit (HSI), which also began to monitor the flight. HSI contacted local authorities in Pennsylvania.

During one refueling stop in Albuquerque, New Mexico, an AMOC informant observed an Hispanic male (presumably Rosales) accompanying Nichols as the sole passenger. The informant noted a large duffel bag in the plane and observed that Nichols locked the plane during the brief stop. At a later refueling stop in Oklahoma, an AMOC informant observed the plane taxi backwards down the runway, leading the informant to conclude that the pilot was inexperienced. In addition, AMOC informed HSI that, as the plane flew over Kentucky, the plane's transponder was turned off for three minutes, indicating an attempt to avoid detection. After receiving this information from AMOC, HSI determined that Nichols had previously been arrested in Philadelphia for drug possession and carrying a concealed weapon.

After the plane landed, Rosales and Nichols disembarked and left the airport on foot. The men began walking together down the dark and quiet road outside the airfield when they were approached by authorities. One local police officer

3

initially approached them and, very shortly thereafter, two additional officers arrived.

During the conversation with the officers, Nichols reached inside his bag and authorities observed a white plastic bag containing what appeared to be marijuana. When asked about the plastic bag, both men attempted to flee. Authorities intercepted and arrested the men and recovered four bricks of cocaine from their bags. After receiving a *Miranda* warning, Rosales provided a statement admitting that he had assisted Nichols in transporting cocaine from California to Pennsylvania. Rosales and Nichols were later indicted for possession and conspiracy to possess with intent to distribute 500 grams or more of cocaine. 21 U.S.C. §§ 841(a)(1), 846.

Rosales moved to suppress both the physical evidence and his statement, arguing that authorities lacked reasonable suspicion to make the initial investigatory stop after the plane landed. The District Court held a hearing and, by order entered October 8, 2015, denied the motion.

Rosales pleaded guilty but preserved his right to appeal the suppression ruling. He was later sentenced to 60 months' imprisonment. Nichols also pleaded guilty and was sentenced to 36 months' imprisonment. He did not appeal.

II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  "We review the District Court's denial of a motion to suppress for clear error as to the underlying factual determinations but exercise plenary review over the District Court's application of law to those facts."  *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011).  We therefore conduct a plenary review of whether a seizure is supported by reasonable suspicion.  *United States v. Lowe*, 791 F.3d 424, 427 (3d Cir. 2015).

Where, as here, authorities conduct a brief investigatory stop without a warrant, the seizure is permissible under the Fourth Amendment if the officers acted with "reasonable, articulable suspicion that criminal activity is afoot."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  Reasonable suspicion is a less demanding standard than probable cause, but requires at least a minimal level of objective justification; the officer "must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity."  *Wardlow*, 528 U.S. at 123-24 (citing *Terry*, 392 U.S. at 27).  Because the concept of reasonable suspicion cannot be reduced to a "neat set of legal rules," we must consider the totality of the circumstances.  *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989) (citation omitted).  Even where each fact being considered may not itself be inconsistent with innocent travel, a set of facts

5

taken together may give rise to reasonable suspicion. *Id.* at 9. The inquiry is not whether the conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of non-criminal acts. *Id.* at 10.

III.

The District Court determined that, for Fourth Amendment purposes, the men were stopped when the first officer approached Rosales and Nichols on the road outside the airfield. Rosales does not dispute that determination. Rosales claims the District Court erroneously concluded that the circumstances gave rise to reasonable suspicion for the stop. He contends the flight activities observed by AMOC and HSI were not inherently suspicious and could have been viewed as activities of a hobbyist or an inexperienced small-plane pilot. The stop, he argues, was based on no more than mere speculation that criminal activity was afoot and was not justified by reasonable, articulable facts indicating Rosales was engaged in criminal activity. We disagree.

The facts presented, taken together, are sufficient to give rise to objectively justifiable suspicion—far more than a mere "hunch"—of criminal activity, for a number of reasons. First, the officers who stopped Nichols and Rosales had the benefit of AMOC's input in deeming the small plane's flight suspicious. We have held that officers may draw on their specialized training to make inferences about the information available to them. *United States v. Thompson*, 772 F.3d 752, 758

6

(3d Cir. 2014). AMOC flagged the flight based on a number of articulated facts, including knowledge of "source" and "destination" cities for drugs, an uncommon flight pattern (frequent stops and changes in course headings and altitude), and unusual behavior reported by on-the-ground AMOC informants (locking the plane during a brief refueling, taxiing backward down a runway).

Second, unusual means of travel or strange behavior while travelling, even if legal, may give rise to reasonable suspicion, *see Sokolow*, 490 U.S. at 8-10, as may an unusual time and location of the stop, *see Michigan v. Long*, 463 U.S. 1032, 1050 (1983), and the stopped individual's criminal history, *see United States v. Mathurin*, 561 F.3d 170, 176-77 (3d Cir. 2009). Nichols and Rosales engaged in unusual means of travel (an overnight cross-country flight in a small plane that made frequent stops and altitude changes), engaged in apparent efforts to attempt evasion (turning off the plane's transponder and departing the airport on foot), arrived at an unusual time and location (in a pre-dawn hour at a deserted rural airport), and Nichols had a criminal history (including a drug arrest).

Finally, reasonable suspicion as to one individual may "taint" his associate, where the criminal activity is contemporaneous with the association or where the nature of the activity is such that it could not normally be carried out without the knowledge of all present. *See United States v. Martinez-Molina*, 64 F.3d 719, 727 (1st Cir. 1995). Rosales was Nichols's sole passenger for a lengthy overnight

7

cross-country flight in a small airplane; he was present for the plane's numerous stops, including the stop during which Nichols locked the plane for a brief refueling; and he accompanied Nichols by departing a deserted airport on foot down a desolate rural road.

These circumstances, considered together, are sufficient to give rise to reasonable suspicion that criminal activity was afoot and that Rosales was involved in it. *Cf. Ybarra v. Illinois*, 444 US. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."). While Rosales is correct that the flight *could* have been that of a hobbyist and that some of the details observed by AMOC and HSI *could* be attributed to inexperience rather than criminal activity, an alternative innocent explanation does not undermine our conclusion. *See Sokolow*, 490 U.S. at 9. Viewing the sum of the circumstances, it is apparent that the authorities relied upon articulable, objective facts giving rise to reasonable suspicion of criminal activity sufficient to stop Rosales.[2]

---

[2] The District Court determined that the *Terry* stop occurred when the first officer approached Rosales and Nichols. The Government argues that we should conclude that the seizure occurred about one minute later, when the two additional officers arrived, and that we should therefore consider one additional fact in support of reasonable suspicion (specifically, a false statement by Nichols about the length of the flight, which he made to the first officer). Rosales responds that the record is unclear as to the precise timing of the false statement and that it was not made before he and Nichols were seized in any event. Because inclusion of this fact

IV.

Because authorities had reasonable suspicion to conduct a *Terry* stop,

Rosales has not demonstrated that the District Court erred in denying his motion to

suppress. The District Court's order therefore will be affirmed and the judgment

of conviction will stand.

---

would not change the outcome of the appeal, we see no need to act on the
Government's suggestion to more closely consider the precise timing of the stop or
of Nichols's false statement.